IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SWEETWATER INVESTORS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:10-CV-223-WKW [WO] |
| | ) |
| SWEETWATER APARTMENTS | ) |
| LOAN, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Before the court are Defendants' motion for leave to file answers to the amended complaint out of time (Doc. # 62), and Plaintiff's motion for summary judgment (Doc. # 60). The motions have been fully briefed. (Docs. # 61, 68, 69, 71, 72.) After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for leave to file answers out of time is due to be granted and that the motion for summary judgment is due to be denied.

### I. BACKGROUND

The following procedural history is relevant to the pending motions. Plaintiff Sweetwater Investors, LLC ("Plaintiff") commenced this diversity action on March 12, 2010, alleging breach of contract and fraud arising out of a failed transaction for the purchase of a loan. (Doc. # 39.) Defendants Sweetwater Apartments Loan, LLC, SIMA Corporation, and James T. Knell did not serve an answer, but instead filed a motion to dismiss on April 30, 2010. (Doc. # 12.) On May 20, 2010, within the time permitted by Rule 15(a)(1)(B) of

the Federal Rules of Civil Procedure, Plaintiff filed an amended complaint. (Doc. # 18.) On May 27, 2010, based upon the filing of the amended complaint, Defendants' motion to dismiss was denied as moot. (Doc. # 19.)

On June 3, 2010, Defendants filed a motion to dismiss the amended complaint. (Doc. # 21.) Discovery was active during the pendency of this motion. On June 15, 2010, the parties held a planning meeting and developed a proposed discovery plan, as required by Federal Rule of Civil Procedure 26(f). (Doc. # 23.) Based upon that plan, on July 8, 2010, the court entered a Uniform Scheduling Order, which set the trial for September 19, 2011, and imposed discovery and other deadlines. (Docs. # 23-24.) Of particular relevance, Defendant Knell was deposed on November 9, 2010. Two weeks later, on November 24, 2010, an order granting in part and denying in part the then-pending motion to dismiss was entered. (Doc. # 39.) The electronic filing of this order started the clock for Defendants to serve answers to the amended complaint. *See* Fed. R. Civ. P. 12(a)(4)(A). Defendants' answers had to be served on or before December 8, 2011. *Id.*; (*see also* Doc. # 69, at 5.) The answers were not filed by that date, but the litigation was far from stagnant.[1]

Proceedings continued, and the parties filed an amended Rule 26(f) discovery plan on December 20, 2010. Based upon the parties' filing and the requests made therein, an order was entered extending certain deadlines in the Uniform Scheduling Order. (Docs. # 41, 43.) Pursuant to that order, the trial remains September 19, 2011; the dispositive motion deadline

---

[1] As represented by the parties and as indicated in a recent flurry of discovery motions, discovery has been extensive and is ongoing.

is June 1, 2011; and the discovery deadline is July 22, 2011. (Doc. # 43.) On February 22, 2011, the parties mediated the case, albeit unsuccessfully. (Doc. # 41; *see also* Doc. # 68, at 10.)

On Friday, March 11, 2011, Plaintiff filed a motion for summary judgment. (Doc. # 60.) Plaintiff seeks summary judgment on the grounds that Defendants did not file answers specifically controverting the allegations in the amended complaint and, thus, according to Plaintiff, have admitted these allegations. *See* Fed. R. Civ. P. 8(b)(6). On March 14, 2011, the next business day, Defendants filed a motion for leave to file answers to the amended complaint, out of time, asserting that their failure to file timely answers was the result of excusable neglect. (Doc. # 62.) As grounds for their motion, Defendants' attorneys assert that they "inadvertently failed to calendar the fourteen (14) day deadline due to an oversight and w[ere] unaware that the deadline had passed until Plaintiff filed its Motion for Summary Judgment." (Doc. # 62 ¶ 6.) Defendants bring their motion, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, because they failed to request an extension of time to file an answer until after Defendants' time to answer had expired. *See* Fed. R. Civ. P. 6(b)(1)(B).

## II. DISCUSSION

**A.     Defendants' Motion for Leave to File Answers Out of Time**

Pursuant to Rule 6(b)(1)(B), a court "may, for good cause," grant an extension of time "upon [a] motion made after the expiration of the specified period," in this case Rule 12, if "the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The

phrase "excusable neglect" appears in several federal procedural rules, including Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, as addressed in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), and in Rule 60(b) of the Federal Rules of Civil Procedure, as addressed in *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir. 1996). In *Pioneer*, the Supreme Court held that the determination of "what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395. These circumstances "include . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* In *Cheney*, the Eleventh Circuit noted that in *Pioneer,* "the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether the district court had abused its discretion." 71 F.3d at 750. Applying the *Pioneer* factors, the court held that under Rule 60(b), an attorney's negligent failure to comply with a filing deadline was excusable neglect. *Id.*

In their briefs, the parties analyze the *Pioneer* factors, but not surprisingly the opposing sides reach different outcomes.[2] Envisioning no reason why the rationale of *Pioneer* would not apply equally to Rule 6(b), the court also will conduct the excusable neglect analysis with *Pioneer* as the guide. *See Fisher v. Office of State Attorney 13th Judicial Circuit Fla.*, 162 Fed. App'x 937, 940 (11th Cir. 2006) (applying the *Pioneer* factors to determine whether Rule 6(b)'s excusable neglect standard had been met); *see also Pioneer*, 507 U.S. at 391 (observing that Fed. R. Bankr. P. 9006(b)(1) "was patterned after Rule 6(b)"); *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (explaining that in *Pioneer*, "[t]he Court . . . reviewed various contexts in which the phrase ["excusable neglect"] appeared in the federal rules of procedure and made it clear the same test applies in all those contexts").

### 1. *Prejudice*

The first *Pioneer* factor requires consideration of the danger of prejudice to the non-movant. 507 U.S. at 395. Plaintiff argues that permitting Defendants to file their answers will cause it "great prejudice" because in their answers, Defendants deny that Mr. Knell was acting as the "actual, implied, or apparent agent or employee" of the corporate Defendants

---

[2] As stated, Rule 6(b)(1) also embodies a "good cause" requirement. The practical difference between the good cause and excusable neglect requirements is difficult to discern, and the briefs give scant attention to this issue. (*See* Doc. # 68, at 3 ("[E]xactly what constitutes good cause [in the context of a Rule 6(b)(1)(B) motion] has seen little attention.").) Indeed, in another context, "good cause" has been equated with "excusable neglect." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3d Cir. 1995). The court leaves for another day the distinction between the "good cause" standard and the "excusable neglect" standard, as set out in Rule 6(b)(1). No argument has been made or authority cited that would foreclose a finding of good cause on this record.

at all times material to this litigation. (Doc. # 18 (Am. Compl. ¶ 4); Ex. to Doc. # 62 (Knell's Answer ¶ 4); Doc. # 68, at 4.) Plaintiff contends that it had "no way . . . to anticipate this denial" because Mr. Knell was deposed on November 9, 2010, in his capacity as the corporate Defendants' Rule 30(b)(6) representative. (Doc. # 68, at 4.) Plaintiff also asserts that Mr. Knell was "the primary person [with whom] the Plaintiff's members and representatives communicated" regarding the transaction at issue. (Doc. # 68, at 4.) Plaintiff argues that, "[i]f Defendants are allowed to file their Proposed Answers[,] Plaintiff will have to re-address the issues of ownership and agency . . . ." (Doc. # 68, at 4-5.) The gist of the remainder of Plaintiff's argument is that the denials in the answers and some of the affirmative defenses contradict Mr. Knell's deposition testimony. (Doc. # 68, at 4-5.)

Defendants, on the other hand, assert that whether Mr. Knell was acting as an agent for the corporate Defendants in his communications with Plaintiff and its members was "thoroughly explored" during Mr. Knell's deposition, and that the denials in the answers are consistent with Mr. Knell's deposition testimony. (Doc. # 69, at 8-12.) They further contend that through the "extensive discovery" phase, Plaintiff has become "well aware that [ ] Defendants deny the claims made in the Amended Complaint." (Doc. # 62 ¶ 19.) Defendants have the better argument.

First, Plaintiff's argument impermissibly extends the parameters of what it means when an individual is designated as a Rule 30(b)(6) representative. By offering Mr. Knell as their 30(b)(6) representative, the corporate Defendants represented that Mr. Knell would

testify "on [the corporate Defendants'] behalf" and "about information known or reasonably available" to the corporate Defendants. Fed. R. Civ. P. 30(b)(6). Rule 30(b)(6) did not require the corporate Defendants to concede that, for all purposes of this litigation, Mr. Knell acted for the corporation within an agency authority, whether actual, implied or apparent.

Relatedly, in the deposition excerpts relied upon by Plaintiff, Mr. Knell did not concede, as Plaintiff suggests, that he "acted as the agent of or on behalf of" the corporate Defendants "during the times relevant to the allegations in the Amended Complaint." (Doc. # 68, at 4 (citing Knell Dep. at 7-8, 210).) Rather, in those excerpts, Mr. Knell merely confirmed that he was testifying as the corporate Defendants' 30(b)(6) representative, that he was the owner of one of the corporate Defendants, and that he was "one of two general partners" of the other corporate Defendant. (Knell Dep. 7-8, 210.) Those facts are not denied in the answers. Indeed, the answers admit that Mr. Knell is SIMA's chairman. (Ex. to Doc. # 62 (Answers ¶ 4).) Plaintiff cites no authority, and the court is aware of none, that title alone is determinative of an actual, implied or apparent agency relationship. *See generally McLemore v. Hyundai Motor Mfg. Ala., LLC*, 7 So. 3d 318, 328-29 (Ala. 2008) (discussing actual, implied and apparent agency); *Wallace v. Frontier Bank, N.A.*, 903 So. 2d 792, 801 (Ala. 2004) ("[A]gency is a question of fact, and agency may not be presumed."). As to the remainder of paragraph 4 of the amended complaint, it contains legal conclusions of agency to which no answer is required by Defendants. (*See* Doc. # 18 (Am. Compl. ¶ 4) (Mr. Knell "was serving as the actual, implied, or apparent agent or employee

of" the corporate Defendants, was acting in the "course of and scope of his authority," and is "legally responsible for harm thereby caused to Plaintiff.).)

Second, although the answers may have provided the first succinct formulation of Defendants' theories, Plaintiff's contention that it has been blind-sided by the answers is not supported by the record. For example, Plaintiff claims prejudice by Defendants' denial of paragraph 16 of the amended complaint, which reads "Defendants have failed or refused to transfer the Loan and the Loan File to Plaintiff despite Plaintiff's performance under the Agreement and demand for said transfer." (Doc. # 18 (Am. Compl. ¶ 16); *see, e.g.*, Doc. # 62-1 (Def. Sweetwater's Answer ¶ 16, denying ¶ 16 of Am. Compl.).) However, as discussed in a prior order, the references in the amended complaint to "Loan Documents," "Loan File," and "documents associated with the Loan" create an ambiguity as to what documents Plaintiff alleges it was entitled to receive under the contract. (Doc. # 39, at 14-15.) Without clear delineation as to what the "Loan File" encompasses, as alleged in paragraph 16 of the Amended Complaint, a denial is unsurprising. Additionally, in the testimony cited by Plaintiff as contradicting Defendants' denial, Mr. Knell was asked, somewhat rhetorically, whether it was this lawsuit that had motivated Mr. Knell "last week" to deliver the "guarantees" at issue to Plaintiff. (Knell Dep. 162.) Mr. Knell's testimony does not conflict with any position taken by Defendants that *presently* any contractual

obligations by Defendant Sweetwater Apartments Loan, LLC, pertaining to the transfer of documents have been fulfilled.[3]

As an additional example, Plaintiff asserts that it was surprised to its prejudice by Defendants' denial of the amended complaint's allegation that Defendants "had the authority to transfer the Loan and Loan File to Plaintiff." (Doc. # 18 (Am. Compl. ¶ 29).) This argument also is not convincing. At the motion to dismiss stage, Defendants clearly asserted their position as to what documents they contended Plaintiff (as the buyer) was entitled to receive from the seller (Defendant Sweetwater Apartments Loan, LLC) under the contract and their position that the seller did not have authorization to provide any other documents previously received from Regions. (*See* Doc. # 22, at 9-10.)

Third, assuming without deciding that some of the denials in the answers are in conflict with Mr. Knell's deposition testimony, timely served answers would not have alerted Plaintiff of the conflict on the date of Mr. Knell's deposition. When Mr. Knell's deposition was taken on November 9, 2010, Defendants' motion to dismiss the amended complaint was pending and, thus, Defendants' answers were not yet due.[4] *See* Fed. R. Civ. P. 12(a)(4)(A) (providing that an answer "must be served within 14 days after notice of the court's action" on a Rule 12 motion). Hence, even if Defendants had timely served their answers, Plaintiff

---

[3] No opinion is expressed as to the merits of the claim disputes.

[4] On November 9, 2010, Plaintiff was aware that the fourteen-day time period for service of Defendants' answers had not yet commenced. (*See* Knell Dep. 208, in which counsel for Plaintiff says, "I need to explore that [issue] a little bit just because I know we're in an odd situation where the Judge hasn't ruled on your motion to dismiss; therefore, you haven't filed an answer.") (Ex. C to Doc. # 61).)

would not have known on November 9, 2010, which allegations in the amended complaint were disputed by the answers or which affirmative defenses would be pleaded.

Overall, based upon careful consideration of Plaintiff's arguments, the assertions of prejudice lack force. The first *Pioneer* factor weighs heavily in Defendants' favor.

### 2. *Length of the Delay and Its Potential Impact on the Judicial Proceedings*

The second *Pioneer* factor requires consideration of the "length of the delay and its potential impact on judicial proceedings." 507 U.S. at 395. The date the answer was due marks the starting point for measuring the length of the delay. Approximately three months passed between the date the answer was due (December 8, 2010) and the date Defendants filed their motion for leave to file their answers out of time (March 14, 2011). To be sure, the time period that transpired prior to Defendants recognizing their error is longer than the six-day delay in *Cheney*, *see* 71 F.3d at 849, and the twenty-day delay in *Pioneer*, 507 U.S. at 384. However, similar to the scenario in *Cheney*, during the delay, the parties actively and vigorously engaged in discovery and settlement discussions. *See* 71 F.3d at 850. The parties even mediated the case during this period of time. This is not, therefore, a case that was stagnant because of the delay.

Plaintiff asserts, however, that the delay places it in a "dilemma" of having to "choose whether to risk being able to adequately complete discovery in less than four months or ask this Court to postpone the proceedings . . . ." (Doc. # 68, at 8.) In light of the discussion in the preceding section, Plaintiff's assertion that the answers have changed the course of this

10

litigation, thereby requiring extensive additional discovery, is not supported by the record. The court is not convinced, at this point, that the three-month delay will necessitate a continuance of the September 19, 2011 trial date, or that allowing Defendants to file untimely answers will otherwise have an adverse effect on the efficient judicial administration of this case.

### 3.     *The Reason for the Delay*

The third *Pioneer* factor focuses on the reason for the delay. *See* 507 U.S. at 395. Defendants' attorneys assert that they "inadvertently failed to calendar the fourteen (14) day deadline due to an oversight and w[ere] unaware that the deadline had passed until Plaintiff filed its Motion for Summary Judgment." (Doc. # 62 ¶ 6.) Plaintiff argues that because the "undisputed cause of the delay was inadvertence," no discussion is required, "other than to point out that [this reason] was a matter wholly within Defendants' control," and that *Pioneer* forewarned that "'inadvertence . . . do[es] not usually constitute excusable neglect.'" (Doc. # 68, at 7 (quoting *Pioneer*, 507 U.S. at 392).)

Plaintiff correctly quotes *Pioneer*, and that quotation admittedly favors Plaintiff to the extent that the inadvertence here is of the usual kind. However, Plaintiff did not quote the whole passage, which also contains language that favors Defendants:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under [Federal Rule of Civil Procedure] Rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

11

*Pioneer*, 507 U.S. at 392 (internal footnotes omitted).[5]  The *Pioneer* Court also observed that "there is no indication that anything other than the commonly accepted meaning of the phrase ["excusable neglect"] was intended by [Rule 6(b)'s] drafters." *Id.* at 391.  As explained in *Pioneer*, "the ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to *esp[ecially] through carelessness*.'"  *Id.* at 388 (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)).  "The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."  *Id.*; *see also Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) ("[M]ere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(2)[,]" now Rule(b)(1)(B)]." (citing *Pioneer*, 507 U.S. at 391-92)).

Here, Defendants' attorneys assert that they missed the deadline for serving their answers based upon a failure to place the deadline on a calendar.  There is no dispute that avoidance of this error was within the control of Defendants' attorneys.  Additionally, Defendants' assertion that the cause of the delay was due to inadvertence is not challenged by Plaintiff.  While Plaintiff contends otherwise, based upon the foregoing authority, these circumstances do not make the neglect inexcusable.  To the contrary, Eleventh Circuit decisions decided in the post-*Pioneer* world support a finding that the reason for the delay weighs in Defendants' favor.  *See Walter v. Blue Cross & Blue Shield United of Wis.*, 181

---

[5] The Ninth Circuit has described this passage as "having a little something for everyone." *Pincay*, 389 F.3d at 857.

F.3d 1198, 1202 (11th Cir. 1999) (finding excusable neglect and that the reason for the delay – "the failure of a former secretary of [the movant's] attorney to record the applicable deadline" – was "the type of 'innocent oversight' involved in *Cheney*" (citing *Cheney*, 71 F.3d at 850)); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 999 (11th Cir. 1997) (explaining that when there is a "mistake of fact," such in *Cheney*, which was a "miscommunication case or clerical-error case," the neglect can be excusable).

### 4. *Good Faith*

The fourth *Pioneer* factor examines "whether the movant acted in good faith." 507 U.S. at 395. Plaintiff argues that defense counsel's conduct during discovery and the content of the proposed answers are indicative of an absence of good faith.[6] (Doc. # 68, at 8-12.) Defendants "strenuously den[y]" the accusations of unprofessional conduct, but contend that, under the Eleventh Circuit's opinion in *Cheney*, the good faith requirement "only relates to the 'good faith' in missing the deadline on that pleading." (Doc. # 69, at 14.)

In *Cheney*, notwithstanding that counsel's "failure to comply with the filing deadline [was] attributable to negligence," the Eleventh Circuit found "no indication that counsel deliberately disregarded [the local rule's filing deadline]," and there was no argument that counsel "intended to delay the trial, or that he sought an advantage by filing late." 71 F.3d

---

[6] Plaintiff contends that the proposed answers "show that [Defendants] have failed to act in good faith" because the answers "contain multiple denials of allegations previously conceded by" Mr. Knell. (Doc. # 68, at 12.) This argument was rejected above, and no further discussion is required here. In short, Plaintiff has not demonstrated that the content of the answers is indicative of an absence of good faith.

at 850.  "The nonfiling was simply an innocent oversight by counsel."  *Id.*  Accordingly, the court found "no bad faith that would warrant forfeiture of [the plaintiff's] right to a full trial of his cause."[7]  *Id.*

*Cheney* lends support to Defendants' argument that the motivation behind the tardy filing is key in examining *Pioneer*'s good faith requirement.  *Cheney* focused on whether the deadline was purposefully snubbed to delay the trial or to obtain a litigation advantage.[8]  *See* 71 F.3d at 850.

Here, there is no suggestion that counsel for Defendants purposefully ignored the deadline for serving answers, as established in Fed. R. Civ. P. 12(a)(4)(A), or purposefully refused to serve an answer to the amended complaint.  In fact, Plaintiff does not contend that the missed deadline was the result of conduct any more culpable than inadvertence.  There also is an indication that Defendants' attorneys acted in good faith to comply with the missed deadline by promptly moving for leave to file their answers out of time once they realized the error.  Moreover, while the attorneys for Defendants neglected a deadline for a period of time, no argument has been made that they neglected this case altogether.  To the contrary,

---

[7] *Pioneer* phrased the fourth factor as "whether the movant acted in good faith."  507 U.S. at 395. In *Cheney*, the Eleventh Circuit discussed this factor in terms of whether there was "bad faith" or a "lack of bad faith on the part" of the movant.  71 F.3d at 850.

[8] On the other hand, the court does not believe that *Cheney* requires tunnel vision when other circumstances of the litigation clearly demonstrate the absence of good faith on the part of the movant or where an absence of good faith in missing the deadline can be inferred from those other circumstances. Because such other circumstances are not present in this case, the court need not decide the issue.  The court has considered carefully Plaintiff's arguments, but does not find that those arguments tilt this factor in its favor.

as stated elsewhere in this opinion, the attorneys on both sides have been very busy pursuing discovery and settlement negotiations. On this record, the court finds that *Pioneer*'s good faith factor weighs in Defendants' favor.

### 5. *Conclusion*

"[A]ll relevant circumstances surrounding" counsel for Defendants' missed deadline have been considered. *Pioneer*, 507 U.S. at 395. The absence of prejudice to Plaintiff and the minimal negative impact on efficient judicial administration, combined with the reason for the delay and good faith of counsel, weigh in favor of a finding of excusable neglect under Rule 6(b)(1)(B). Accordingly, Defendants' motion for leave to file answers to the amended complaint out of time is due to be granted.

With that said, the court is cognizant that Plaintiff's notice of the answers' denials and defenses has been cut short by some three months based upon Defendants' tardiness. There are still, however, three months remaining until the July 22 discovery deadline. To the extent that Plaintiff deems this time period insufficient to conclude discovery, careful consideration will be given to any motion requesting an extension of that deadline.

It must also be noted that a review of the record suggests a measure of gamesmanship on the part of both Plaintiff and Defendants with respect to discovery. Henceforth, the parties are forewarned that full cooperation in the remaining discovery process, and nothing less, is expected of them, and delays in scheduling depositions or in responding to discovery requests are expected to be minimal, preferably nonexistent. While the court is available to

resolve discovery disputes and, in fact, is in the process of doing so now (*see* Docs. 46-48, 50-56, 59), good faith efforts to resolve disputes should be taken before resort to the court.

**B.      Plaintiff's Motion for Summary Judgment**

Plaintiff contends that it is entitled to summary judgment because Defendants did not answer the amended complaint. (Doc. # 61, at 7-8.) Plaintiff's argument rests on Rule 8(b)(6), which provides that "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). Because Defendants will be permitted to file their answers out of time, Plaintiff's foundation for summary judgment crumbles. Accordingly, Plaintiff's motion for summary judgment is due to be denied.

### III.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' motion for leave to file answers to the amended complaint out of time (Doc. # 62) is GRANTED. Defendants shall file exact duplicates of their answers on or before **April 28, 2011**.

It is further ORDERED that Plaintiff's motion for summary judgment (Doc. # 60) is DENIED.

DONE this 25th day of April, 2011.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE